UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Jessica B.,[1]

                        Plaintiff,                      Court File No. 19-cv-01276 (DSD/LIB)

      v.                               **REPORT AND RECOMMENDATION**

Andrew Saul,
Commissioner of Social Security,

                        Defendant.

_____

      Plaintiff, Jessica B. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 16, 20], and the Court took the matter under advisement on the written submissions.

      For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 16], be **GRANTED in part** and **DENIED in part**, and that Defendant's Motion for Summary Judgment, [Docket No. 20], be **DENIED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I.  Procedural History

On November 14, 2014, Plaintiff filed an application for supplemental security income. (Tr. 17).[2] Plaintiff alleged that her disability began on November 1, 2011. (Tr. 17). The Commissioner initially denied Plaintiff's present claim on July 8, 2015, and again, upon reconsideration, on October 29, 2015. (Tr. 17). On December 29, 2015, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 17).

Administrative Law Judge Corey Ayling (the "ALJ") conducted a hearing on May 9, 2018, in Minneapolis, Minnesota. (Tr. 17, 28). Plaintiff was represented by legal counsel at the administrative hearing. (Tr. 17). Plaintiff, Plaintiff's mother and guardian Dawn Bremer ("Ms. Bremer"), and an impartial vocational expert ("VE"), Norman A. Mastbaum, ("IVE Mastbaum"), testified at the hearing. (Tr. 17). On July 26, 2018, the ALJ issued a decision denying Plaintiff's request for supplemental security income. (Tr. 17–28). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 28).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1). Subsequently, on April 18, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1–5). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On May 14, 2019, Plaintiff filed the present action. (Compl. [Docket No. 1]).

## II.  Standards of Review

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 11], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 64 exhibits. (See, Administrative Record [Docket No. 11]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

with the reconsidered decision may then obtain administrative review by an administrative law judge. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal district court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

In the present case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 1–5), thus making the ALJ's decision effectively the final decision of the Commissioner.

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision [through the ALJ], the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within

the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

## III. Decision Under Review

The ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 14, 2014, the application date. (Tr. 19). This finding is not in dispute.

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: autism spectrum disorder, diagnosed as Asperger's disorder; generalized anxiety disorder with panic attacks; depressive disorder NOS; attention deficit hyperactivity disorder; insomnia; a history of learning disability in math; and obesity." (Tr. 19). Plaintiff does not challenge the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 12.04, 12.06, 12.10, and 12.11. (Tr. 20–22). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 416.967(c) except lifting and carrying 50 pounds occasionally and 25 pounds frequently, sitting for 6 hours and standing and/or walking for 6 hours in an 8-hour day, pushing and pulling as much as lifting and carrying, occasional climbing in ramps and stairs, no climbing of ladders, ropes or scaffolds, occasional balancing, never operating a motor vehicle, and limited to performing simple, routine and repetitive tasks and simple work-related decisions with occasional and superficial interactions with coworkers and supervisors such that work is rated no lower than 8 on the people scale of Appendix B to the *Dictionary of Occupational Titles* (DOT), 1991 Revised Edition, and no public interactions.

(Tr. 22). Plaintiff does challenge this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," however, the ALJ also noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22). Plaintiff does challenge this credibility finding by the ALJ.

The ALJ found that Plaintiff "has no past relevant work." (Tr. 27). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 27). Relying upon testimony from

IVE Mastbaum, the ALJ specifically found that among the occupations Plaintiff would be able to perform were "press operator, paper" of which there are 40,000 positions in the national economy; "packager/sealer" of which there are 65,000 positions in the national economy; and "laundry worker" of which there are 7,000 positions in the national economy. (Tr. 27–28). Plaintiff also challenges these findings of the ALJ.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 28).

**IV. Analysis**

Plaintiff asserts one general overarching issue on her appeal of the ALJ's decision: whether there is substantial evidence on the record, as a whole, to support the ALJ's RFC determination. (See, Plf.'s Mem., [Docket No. 17], at 26–38). In support of her argument, Plaintiff proffers three assertions. First, Plaintiff asserts that the ALJ erred in his RFC determination by improperly weighing opinion evidence. (See, Id., at 27–31). Second, Plaintiff argues that the ALJ erred in his RFC determination by failing to provide adequate symptom analysis in support of his credibility determination. (See, Id., at 32–36). Third, Plaintiff argues that the ALJ erred by failing to sufficiently develop the record.[3] (See, Id. at 36–38).

Plaintiff further argues that the Court should reverse the ALJ's decision and make an award of benefits now because "[a]ll evidence of record supports disability and a remand would serve no purpose." (See, Id. at 39).

"A claimant's RFC represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d

---

[3] Plaintiff also argues that because the ALJ erred in his RFC determination, the ALJ's hypothetical questions posed to IVE Mastbaum did not accurately reflect Plaintiff's limitations, and therefore, the ALJ incorrectly found at step five that Plaintiff could perform the identified jobs. (Tr. 38).

605, 614 (8th Cir. 2011); accord, 20 C.F.R. § 404.1545(a)(1). "A disability claimant has the burden

to establish h[er] RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). "The ALJ

determines a claimant's RFC based on all relevant evidence, including medical records,

observations of treating physicians and others, and the claimant's own descriptions of his or her

limitations." Id. at 591. "Because a claimant's RFC is a medical question, an ALJ's assessment of

it must be supported by some medical evidence of a claimant's ability to function in the workplace.

However, there is no requirement that an RFC finding be supported by a specific medical opinion."

Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). "Even though the RFC assessment draws

from medical sources for support, it is ultimately an administrative determination reserved to the

Commissioner." Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012).

### A. Opinion Evidence

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence

because the ALJ improperly weighed the opinion evidence. (Plf.'s Mem., [Docket No. 13], at 27–

32). First, Plaintiff argues that more weight should have been given to the opinions of Dr. John

Loraas, Ph.D., LP, and that the ALJ's limited analyses in support of his decision to discount the

opinions of Dr. Loraas did not satisfy the ALJ's responsibility to provide good reasons for the

weight given. (Tr. 27–32). Second, Plaintiff argues that the opinions of the State Agency

Consultants should have been given less weight, and that the ALJ's analysis of those opinions "is

rife with mischaracterizations and omissions from the record." (Tr. 30–31). And third, Plaintiff

argues that the ALJ erred in disregarding statements made by claimant's mother, Ms. Bremer. (Id.

at 31–32).

A treating physician's opinion "on the issue(s) of the nature and severity" of an impairment

is given controlling weight when it "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir. 2002) (quoting 20 C.F.R. § 404.1527(d)(2)). Nonetheless, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

The Eighth Circuit has held that an ALJ may properly choose not to give controlling weight to the opinion of a treating physician when it is based solely on a claimant's subjective reports, or when the opinion is inconsistent with the treating physician's own treatment notes. Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015). Even when a treating physician's opinion is not entitled to controlling weight, the opinion is typically entitled to substantial weight and should not ordinarily be disregarded without good reason. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015).

However, an ALJ may properly choose to give the opinion of a treating physician no weight when it is inconsistent with the overall evidence in the medical record. Papesh, 786 F.3d at 1132. Further, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Miller, 784 F.3d at 477 (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)).

An ALJ may also discount or even disregard a treating physician's medical opinion, and adopt the contrary medical opinion of a consulting physician, when the treating source's statements are conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's determination is justified by substantial evidence in the record as a whole. See, Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).

In other words, the ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces him otherwise. See, Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007). Moreover, "opinions that a claimant is 'disabled' or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005)); see also, SSR 96-5p (July 2, 1996) ("Giving controlling weight to [treating source] opinions would, in effect, confer upon the treating source the authority to make" disability determinations).

When, however, an ALJ does choose not to give controlling weight to the opinion of a treating physician, the regulations require that they explain their reasons for doing so. See, 20 C.F.R. § 404.1527(c)(2).

Here, Dr. Loraas is a "treating source" because he is a licensed psychologist that treated Plaintiff. See, Lacroix v. Barnhart, 465 F.3d 881, 885–86 (8th Cir. 2006) ("A 'treating source' is defined as a 'physician, psychologist, or other acceptable medical source' who treats the claimant." (quoting 20 C.F.R. §§ 404.152, 416.902)). Dr. Loraas initially treated Plaintiff in 2010 and 2011 while Plaintiff was still in high school. (See, Tr. 1142; see also, 476–98). Dr. Loraas resumed treating Plaintiff in September 2015, and the record indicates that treatment continued through at least early 2018. (See, Tr. 1118–42, 1158–69, 1180).

Dr. Loraas provided two medical opinions on Plaintiff's ability to complete work-related activities.[4] (Tr. 1118–20, 1181–83). The ALJ explained his decision to discount Dr. Loraas's opinions by stating:

---

[4] Defendant argues that the ALJ did not err in his decision to discount Dr. Lorass's opinions because "[a] conclusory checkbox form has little evidentiary value when it cites no medical evidence and provides little to no elaboration." (Def.'s Mem. [Docket No. 21], at 4–5 (quoting Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012)). However, Dr. Loraas's opinions consisted of check-mark boxes, as well as, spaces for Dr. Loraas to provide written explanations.

> I afford little weight to the March 2017 medical source statement of John Loraas, Ph.D, LP. (Exhibit 10F). The severity of the findings is not supported by progress notes or the claimant's overall functioning. Rather, the findings reflect the subjective report of Dawn Bremer. (Exhibit 11F, page 22). Dr. Loraas submitted a disabling mental medical source statement in March 2018 despite noting some improved daily functioning over the past year. (Exhibit 15F). A review of progress notes reflect low mood and inconsistent attendance, but increasing activities in and out of the home. (Exhibits 11F and 13F).

(Tr. 26). As is explained below, the Court finds the ALJ's explanation for discounting Dr. Loraas opinions to be inadequate.

Regarding Dr. Loraas's March 2017 opinion, the ALJ concluded that "the findings reflect the subjective report of Dawn Bremer." (Tr. 26). In support of this conclusion, the ALJ cited to a single record, the Initial Diagnostic Assessment completed by Dr. Loraas on September 29, 2015, which amounted to an update on Plaintiff's status at the outset of Dr. Loraas's resumption of treatment of Plaintiff in 2015. (See, Tr. 26; see also, Tr. 1142). Although it is unclear whether Dr. Lorass met with Plaintiff during his Initial Diagnostic Assessment, Dr. Loraas's therapy notes indicate that he typically met separately with both Plaintiff and her mother, Ms. Bremer, during a session. (See, e.g., Tr. 482, 487, 489, 491, 492, 496–97, 1121–24, 1126–31, 1135–36, 1138, 1140, 1158–69). During some sessions, Dr. Loraas indicated that he met with Plaintiff for most of the hour. (See, e.g., Tr. 484, 1128, 1131, 1169). Occasionally, Dr. Loraas spent the whole session with Plaintiff, (see, e.g., Tr. 1139, 1141), or spent the whole session with Ms. Bremer if Plaintiff did not attend, (see, e.g., Tr. 483, 493, 1137). In reaching his conclusion that Dr. Loraas's March 2017, opinion was based on the subjective report of Ms. Bremer, the ALJ failed to mention any of the substantial individual therapy Dr. Loraas conducted with Plaintiff. (See, Tr. 17–28).

---

(See, Tr. 1118–20, 1181–83). Further, as explained below, Dr. Loraas's opinions were not solely based on his own observations and treatment notes, but also the results of objective tests conducted by Dr. Rumsey. (See, Id.). Therefore, Defendant's argument is unpersuasive. See, e.g., Sergey F. v. Saul, No. 18-cv-1276-KMM, 2019 WL 4740088, at *6 (D. Minn. Sept. 27, 2019) (finding that a three-page check-box form opinion which provided brief explanations was "neither conclusory not unexplained").

Moreover, Dr. Loraas's March 2017, opinion was not based solely on his own treatment of Plaintiff. In his March 2017, opinion, Dr. Loraas repeatedly referred to objective testing conducted by Dr. Robin Rumsey, Ph.D., LP, during a two-session evaluation of Plaintiff that took place on January 11, 2017, and January 25, 2017. (See, 1118–20; see also, Tr. 1054–63). Indeed, prior to completing his March 2017, opinion, Dr. Loraas consulted with Dr. Rumsey to review the results of Plaintiff's testing and obtain Dr. Rumsey's insight. (Tr. 1125). Dr. Loraas's notes on the consultation state:

> Like myself, Dr. Rumsey feels that [Plaintiff's] comfort-zone has shrunk to [the] point where when [in] it, she often feels ok. Yet, if [Plaintiff] needs to go outside of it or external demands [are] placed on her that she feels she cannot meet/handle, then the anxiety breaks through, impacting processing, etc.

(Id.). In reaching his conclusion that Dr. Loraas's March 2017, opinion was based on the subjective report of Ms. Bremer, the ALJ failed to address that Dr. Loraas's March 2017, opinion directly refers to the objective testing conducted by Dr. Rumsey. (See, Tr. 17–28). The ALJ further failed to address that Dr. Loraas consulted with Dr. Rumsey prior to completing his March 2017, opinion. (Id.).

The ALJ also concluded that Dr. Loraas's March 2017, opinion was not supported by the progress notes or Plaintiff's overall functioning. (See, Tr. 26). Although the ALJ provided an overview of Dr. Loraas's treatment notes following the resumption of Plaintiff's treatment in 2015 through March 2017, the ALJ's overview contains notable omissions. (See, Tr. 25). More importantly, the ALJ failed to articulate how the treatment notes or overall functioning actually contradict Dr. Loraas's March 2017, opinion. (See, Tr. 17–28). To the contrary, many of Dr. Loraas's treatment notes support his March 2017, opinion on Plaintiff's abilities. (See, 1129–41).

For example, the ALJ noted that "[o]n March 24, 2016, [Plaintiff's] mother [Ms. Bremer] shared that the claimant showed some passion for cooking," however, the ALJ did not mention

that Plaintiff also reported "free-floating anxiety" which Dr. Loraas attributed to stress at home. (See, Tr. 25, 1138). The ALJ also failed to mention that Dr. Loraas noted Plaintiff was "[n]ot activating outside the home." (See, Id.). The ALJ noted that "[Plaintiff] did not attend her April 15, 2016 session because her mother felt claimant was too overwhelmed with house/clearing-cleaning, etc.," and that "[h]er mother declined the idea of increasing ILS visits as causing too much stress for [Plaintiff]."[5] (Tr. 25). However, the ALJ did not mention that Dr. Loraas indicated Plaintiff's non-attendance was "likely [an] avoidance issue." (See, Tr. 25, 1137). Nor did the ALJ mention that Dr. Loraas's treatment notes indicate that Ms. Bremer merely felt that weekly ILS visits would be too much, that they would "try graded exposure," that Ms. Bremer "would like to see ILS increased and then try [a] Day Program in the coming months," or that Ms. Bremer, Plaintiff's ILs worker, Plaintiff's case manager, and Dr. Loraas, all of whom were present at the session either in person or telephonically, "agree[d] that [they] cannot push Plaintiff too quickly." (See, Tr. 25, 1137). In addition, the ALJ did not mention that on May 6, 2016, Dr. Loraas met with Plaintiff at the end of the hall because she had lots of anxiety and was unable to come into his office. (See, Tr. 25, 1136).

Regarding Dr. Loraas's March 2018, opinion, the ALJ stated that "Dr. Loraas submitted a disabling medical source statement in March 2018 despite noting some improved daily functioning over the past year." (Tr. 26). The ALJ concluded that "[a] review of progress notes reflect[s] low mood and inconsistent attendance, but increasing activities in and out of the home."[6] (Id.). In support of this conclusion, the ALJ broadly cited to two sections of the record containing Dr.

---

[5] In the ALJ's overview of Dr. Loraas's treatment notes, as well as, throughout the rest of his decision, the ALJ frequently points out various Plaintiff failures to seek treatment, attend medical appointments, and take medications. (See, Tr. 17–28). The Court will address this issue further below.

[6] The Court notes that the ALJ did not specifically indicate what weight was given to Dr. Loraas's March 2018, opinion, however, the ALJ appears to have given it little weight. (See, e.g., Tr. 26).

Loraas's treatment notes.[7] (See, Tr. 26; see also, Tr. 1121–1153, 1158–1169). The ALJ also provided an overview of Dr. Loraas' notes from between March 2017 and March 2018. (See, Tr. 25).

The ALJ accurately observed that Dr. Loraas's treatment notes from March 2017 to March 2018, indicate that Plaintiff showed some improved functioning in limited areas, such as cooking, doing laundry, and short trips into stores. (See, e.g., Tr. 25, 1158, 1160, 1163, 1165–67, 1169). However, Dr. Loraas specifically considered these improvements in his March 2018, opinion. (See, Tr. 1181 ("Since [the] February 2017 form I completed last year, [Plaintiff] is starting to approach some areas of life skills (e.g., cooking some; doing laundry; going into a store or fast food restaurant by herself).")); see also, Tr. 1182 ("I am pleased that [Plaintiff] has started to slowly try more things like cooking, baking, doing her laundry, [and] sometimes going into a fast-food restaurant/store alone (with parent in the car) to get one or just a few items."). Despite these marginal improvements, Dr. Loraas opined that Plaintiff's work-related abilities continued to be severely limited. (See, Tr. 1181–83). The ALJ failed to provide any explanation as to how Plaintiff's limited improvements contradicted Dr. Loraas's March 2018, opinion. (See, Tr. 17–28).

More importantly, the ALJ failed to articulate how Plaintiff's marginally improved functioning indicates that Plaintiff is able to obtain and maintain employment. (See, Tr. 17–28). A finding of disability is not per se precluded merely because a person's condition has improved. See, Cox v. Barnhart, 345 F.3d 606, 609 (8th Cir. 2003) ("It is possible for a person's health to improve, and for the person to remain too disabled to work."); Sergey F. v. Saul, No. 18-cv-1276-

---

[7] Defendant asserts that "[t]he ALJ stated that Dr. Loraas's March 2018 opinion was 'not reflective of a treating source statement but a note regarding intake and scheduled visits.'" (Def.'s Mem. [Docket No. 21], at 6 (quoting Tr. 26). However, Defendant misstates the record. (See, Id.; Tr. 26, 1260). What the ALJ actually stated was that "Exhibit 17F is not reflective of a treating source statement but a note regarding intake and scheduled visits." (See, Tr. 26 (emphasis added)). Exhibit 17F is a May 27, 2015, "[t]o whom it may concern" letter from Dr. Kristen Rivera, PsyD, which stated that she was in the process of evaluating Plaintiff at that time. (See, Tr. 1260). Exhibit 17F is not Dr. Loraas's March 2018, opinion. (See, Tr. 1181–83, 1260).

KMM, 2019 WL 4740088, at *6 (D. Minn. Sept. 27, 2019) ("The ALJ highlighted some short periods of improvement in [the plaintiff's] functioning, but those periods do not constitute substantial evidence warranting a finding that Nurse Wolfe's notes are inconsistent with the record."). Here, Dr. Loraas's relevant treatment notes consistently indicate that despite Plaintiff's limited improved functioning, her anxiety issues remained when she left her "comfort zone." (See, e.g., Tr. 1160–65; 1167–69). For example, Dr. Loraas's treatment notes from April 28, 2017, state that:

> [Plaintiff] has cooked once for family. She also reports going into store to get stuff if needed and mom in car. Anxiety/avoidance issues remain, if tasks or suggestions falling outside her comfort zone. This is a long-standing problem dating back to when [we] first met in later high school.

(Tr. 1169). Dr. Loraas's treatment notes from October 31, 2017, state that Plaintiff had an anxiety attack but "she could not recall exactly what brought it on." (Tr. 1163). Dr. Loraas's treatment notes from October 31, 2017, further state that "GAD and social anxiety issues persist. Hard to mobilize [Plaintiff] to lean-into her anxiety areas, yet she has started this past few months with making meals at home, going into grocery store with mom's list." (Id.). And Dr. Loraas's treatment notes from February 12, 2018, state that "[a]nxiety issues remain, and get in the way if activities outside of the comfort zone she prefers." (Tr. 1160). In his March 2018, opinion, Dr. Loraas noted that despite Plaintiff's improvements, "discussion about work is very overwhelming for her." (Tr. 1181). The ALJ failed to address whether Plaintiff's continued anxiety would affect her ability to obtain and maintain employment. (See, Tr. 17–28).

The ALJ also seemed to discount Dr. Loraas's March 2018, opinion in part because of Plaintiff's "inconsistent attendance." (See, Tr. 26). Further, in explaining his decision to give the opinions of the State Agency Consultants more weight than those of Dr. Loraas, the ALJ noted

that "[Plaintiff] has not pursued consistent, intensive mental health therapy."[8] (See, Tr. 26). Throughout the ALJ's decision, he emphasized Plaintiff's occasional failure to seek treatment, attend medical appointments, and take medications. (See, Tr. 23–26). For example, the ALJ noted that:

> [Plaintiff's] mother and legal guardian, Dawn Bremer is heavily involved in [Plaintiff's] care, including scheduling and attending medical appointments with [Plaintiff]. On the other hand, the record is replete with instances of no-shows, cancellations and inconsistent care. She concedes she is responsible for no-shows at times with other no-shows attributable to [Plaintiff's] refusal and inability to leave her home. [Plaintiff] failed a scheduled consultative examination with Robert Lopno, LP. [Plaintiff] testified that she believed the consultative examination was unnecessary in view of other independent examination and told as much to Dr. Lopno's office.

(Tr. 24 (citations omitted)).

"Failure to follow prescribed medical treatment without good cause is a basis for denying benefits. Infrequent treatment is also a basis for discounting a claimant's subjective complaints." Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004); see also, Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014) ("An ALJ . . . may discredit complaints . . . if the claimant does not seek regular medical treatment."); Delores J. on behalf of Q.J.J. v. Saul, No. 18-cv-1104 (HB), 2019 WL 3891088, at *12 n.11 (D. Minn. Aug. 19, 2019) ("[N]oncompliance with any prescribed treatment, including attendance at therapy, may also support the ALJ's conclusion that claimant is not disabled." (emphasis in original)).

Nonetheless, "there are circumstances in which a claimant's failure to follow prescribed treatment is justifiable and therefore does not preclude a finding of disability." Hensley v. Colvin, 829 F.3d 926, 935 (8th Cir. 2016); see also, Kriss S. v. Berryhill, No. 18-cv-0389 (DWF/HB), 2019 WL 542942, at *8 (D. Minn. Jan. 16, 2019), report and recommendation adopted by 2019

---

[8] The ALJ also seems to at least partially support his credibility determination by pointing to Plaintiff's inconsistent treatment. (See, Tr. 23–26).

WL 538340 (D. Minn. Feb. 11, 2019) ("Under Eighth Circuit caselaw, whether a claimant's noncompliance can be excused on the basis of alleged mental impairments is a critical question that must be addressed by the ALJ."). "Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized psychological and emotional difficulties may deprive a claimant of the rationality to decide whether to continue treatment or medication." Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009). Accordingly, federal courts have recognized a mentally ill person's noncompliance with treatment can be the result of the impairment itself, and therefore, neither willful nor without a justifiable excuse. See, e.g., Id. "Whether severe mental illness has resulted in justifiable noncompliance is a fact-intensive issue." Hensley, 829 F.3d at 935.

Here, Plaintiff's occasional failure to seek treatment, attend medical appointments, take medications, and the reasons therefore, are well-documented in the record. (See, e.g., Tr. 482–83, 487–88, 496, 1024, 1042, 1054–55, 1121, 1123, 1127–29, 1131, 1134–37, 1139, 1142, 1156, 1160–62, 1168–69, 1240). The ALJ stated that "[Ms. Bremer] concedes she is responsible for no-shows at times with other no-shows attributable to the claimant's refusal and inability to leave the home." (Tr. 24). This statement seems to indicate that at least some of Plaintiff's missed medical appointments where due to her impairments. (See, Id.). Nonetheless, beyond this singular statement, the ALJ did not provide any analysis into whether Plaintiff's failure to seek treatment, attend medical appointments, and take medications were caused by her very impairments. (See, Tr. 17–28).

There is a considerable amount of evidence in the record indicating that Plaintiff's failure to seek treatment, attend medical appointments, and take medications may have indeed been due to her impairments. (See, e.g., Tr. 1062, 1136–37, 1168–69, 1240, 1246–48, 1255–56). For

example, on April 15, 2016, when Plaintiff failed to attend therapy, Dr. Loraas noted it was "likely an avoidance issue." (Tr. 1137). Similarly, after Plaintiff cancelled two appointments with Dr. Loraas in June 2017, Dr. Loraas noted that Plaintiff "[c]ancelled last appts due to anxiety/avoidance." (Tr. 1168–69). On January 24, 2017, Dr. Rumsey noted that "[Plaintiff] continues not to have the skills she needs to live independently or manage her finances or healthcare decisions." (Tr. 1062). On July 11, 2014, Plaintiff's case manager, Emily Ibarra, BAS, noted that "[t]he combination of depressive symptoms, anxiety symptoms/fears and problems with memory prevent [Plaintiff] from being able to initiate and follow-through with mental health appointments; she relies completely on her mother/guardian to manage this." (Tr. 1255). At the hearing, Ms. Bremer testified that Plaintiff's anxiety has prevented her from attending medical appointments. (Tr. 50).

Similarly, Plaintiff's inability to regularly attend school is also well-documented in the record. (See, e.g., Tr. 407, 425, 428–30, 433, 442, 456–58, 648, 668, 678, 685, 688, 793, 806–08, 820, 825, 1250). Plaintiff's absences were often attributed to her impairments. (See, e.g., Tr. 429, 442, 649–50, 668, 688, 689, 808, 818, 839, 1037, 1054, 1246, 1255). Plaintiff's failure to contact or meet with her case manager and ILS worker are also well-documented in the record.[9] (See, e.g., Tr. 338, 341–42, 352, 354, 359, 367, 373, 378, 962, 1191–98, 1201–06, 1210–11). These failures may also have been attributable to Plaintiff's impairments. (See, e.g., Tr. 50–51, 962, 1012, 1055, 1185).

---

[9] The ALJ pointed out Plaintiff's inconsistent contact with her ILS worker by stating, "progress notes also reflect some difficulty contacting [Plaintiff] and receiving calls back. (Exhibit 17E, pages 4, 17, 36 and 39). At exhibit 17E page 36, [Plaintiff's] ILS worker noted Dawn Bremer's tendency to schedule a meeting, then call last minute to cancel and reschedule." (Tr. 21–22). However, as with Plaintiff's missed medical appointments, the ALJ here too did not provide any analysis into whether the cancellations were due to Plaintiff's very impairments. (See, Tr. 17–28).

In both of his opinions, Dr. Loraas opined that Plaintiff, if employed, would be absent from work "[m]ore than three times a month." (See, Tr. 1120, 1183). At the administrative hearing, IVE Mastbaum testified that employer tolerance for absenteeism in unskilled jobs would be one absence per month. (Tr. 58). IVE Mastbaum further testified that if an employee in such a position was absent two or more days during the first sixty days of employment, then that employee would be terminated during the second month. (Id.). Considering IVE Mastbaum's testimony and the considerable amount of evidence in the record indicating that Plaintiff's missed medical appointments may have in fact been due to her very impairments, it is concerning that the ALJ seemed to discount Dr. Loraas's opinion in part because of Plaintiff's "inconsistent attendance" without providing any analysis into whether the very cause of Plaintiff's missed medical appointments was in fact her own impairments. (See, e.g., Tr. 17–28).

Lastly, the ALJ did not articulate in his decision how Dr. Loraas's opinions are inconsistent with the record as a whole. Rather, the ALJ's overall analysis contains several blatant omissions and misstatements of the record.

For example, the ALJ pointed to Plaintiff's completion of high school as evidence of Plaintiff's ability to function in a work environment, stating that:

> [Plaintiff] qualified for special education services based on ASD. (Exhibit 1E, page 3). Despite having a modified schedule since grade 10, [Plaintiff] showed academic progress and success. The claimant's IEP specified a high school level rigor of coursework apart from math with accommodations for amount of homework and alternate curricula consistent with that finding. (Exhibit 1E, pages 4 to 7).

(See, Tr. 23; see also, Tr. 20–21). However, while the ALJ stated that Plaintiff had "a modified schedule since grade 10," the record indicates that Plaintiff's modified schedule began long-before grade 10. (See, e.g., Tr. 179, 397–98, 408, 426). Plaintiff qualified for special education services

in sixth grade and her schedule appears to have been modified yearly since that time. (See, e.g., Id.).

Plaintiff's IEP also did not specify "a high school level rigor of coursework." (See, Tr. 177–86). The "custom graduation plan" in Plaintiff's IEP required her to complete a specified number of hours of "seat time," which consisted of time spent in the public library, time spent online, time spent on homework, and service learning hours. (Tr. 177). Plaintiff completed the majority of her seat time hours in "her naturally preferred activity of leisure reading." (Tr. 177–78, 180). Plaintiff's IEP allowed plaintiff to "take stress breaks during her work time," and stated that "[i]f stress breaks are longer than 10 minutes per hour, she will communicate her need to the instructor about an estimate of the length of break." (Tr. 177). The schedule of Plaintiff's graduation plan "was originally designed to be 2-3 sessions per week of 2 hours in length, held at the public library and occasionally at another school site depending on the activity," but Plaintiff's schedule was amended on at least two occasions "to accommodate the significant impacts of [her] mental, physical, and emotional issues." (See, Tr. 179). There is also a considerable amount of further evidence in the record indicating that Plaintiff did not complete "a high school level rigor of coursework." (See, e.g., Tr. 20–21, 23, 177–79, 397–98, 408, 426, 689, 806, 818, 902, 1037, 1228–29, 1246).[10]

Moreover, the ALJ stated that Plaintiff "showed academic progress and success." (Tr. 23; see also, Tr. 20–21). However, the ALJ did not mention Plaintiff's February 6, 2014, Progress Report which indicated "insufficient progress" and noted Plaintiff's lack of attendance and failure

---

[10] Although noted by the ALJ, Plaintiff also attended a science class at the Minnesota Zoo for science credit, visited the History Museum for history credit, orally reviewed movies she had seen over the summer for English credit, and cooked 4 meals for life skills math credit. (See, e.g., Tr. 20–21, 23, 179). Nonetheless, in light of the record as a whole, the Court concludes that these activities do not represent "a high school level rigor of coursework." (See, e.g., Tr. 20–21, 23, 177–79, 397–98, 408, 426, 689, 806, 818, 902, 1037, 1228–29, 1246).

to complete homework. (See, Tr. 17–28, 184). Nor did the ALJ mention Plaintiff's May 21, 2014, Progress Report which also indicated "insufficient progress" and noted that "no further progress" had been made since the prior Progress report. (See, Tr. 17–28, 185–86). The May 21, 2014, Progress Report also indicated that Plaintiff would meet her attendance requirements by meeting four times with a teacher for one hour at the Culver's restaurant near Plaintiff's home. (Tr. 186). In addition, the ALJ did not mention that Plaintiff was twenty-one years old before she graduated high school. (See, Tr. 17–28). Plaintiff turned twenty-one in June 2014, and for that reason was required to graduate before June 30, 2014. (See, e.g., Tr. 177, 185–86, 1228). In May and June 2014, Ms. Bremer indicated to Plaintiff's case worker that she was concerned Plaintiff would not complete the work required to receive her diploma. (See, Tr. 1227, 1233). Plaintiff ultimately received her diploma in June 2015. (See, e.g., Tr. 1240).

Consequently, for the foregoing reasons, the ALJ's decision to discount the opinions of Dr. Loraas was not supported by substantial evidence in the record as a whole, and therefore, the Court finds that remand is appropriate. See, Cheryl J. v. Saul, No. 18-cv-1292 (TNL), 2019 WL 4673943, at *14 (D. Minn. Sept. 25, 2019) (quoting Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005)) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand."); see also, Nelson v. Astrue, No. 11-03346 (DWF/FLN), 2012 WL 7761489, at *17 (D. Minn. Dec. 12, 2012), report and recommendation adopted by 2013 WL 1104265 (D. Minn. Mar. 18, 2013) (remanding where "the ALJ did not provide adequate reasons for giving little weight to the opinion of [the plaintiff's] treating physician and other sources").

### B.  Award of Benefits

Plaintiff argues that the Court should reverse outright the ALJ's decision with an award of benefits now because "[a]ll evidence of record supports disability and a remand would serve no purpose." (See, Plf.'s Mem. [Docket No. 17], at 39).

After determining that the Commissioner's decision is not supported by substantial evidence, a reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. Where there is conflicting evidence in the record, the Court should remand the case back to the Commissioner for further consideration. See, Id.

As outlined above, there is evidence in the record that supports the finding that Plaintiff is disabled. However, while it is possible that Plaintiff will be entitled to benefits, on the present record, this Court cannot say that such a determination can be made as a matter of undisputed fact, and consequently, it declines to reverse for an immediate award of benefits. Instead, the Court will remand this case to the Commissioner so that a determination may be made in a manner consistent with this Order[11].

Therefore, to the extent that Plaintiff seeks an immediate award of benefits, the Court recommends that Plaintiff's Motion be **DENIED**.

---

[11] The ALJ's failure to give controlling weight to the opinions of the Plaintiff's treating medical provider, and the ALJ's lack of any analysis for why he chose to do so, also necessarily calls into question all of the ALJ's other derivative findings at step four and step five. These steps are therefore also within the remand for further administrative proceedings.

## V. Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.  Plaintiff's Motion for Summary Judgment, [Docket No. 16], is **GRANTED in part** and **DENIED in part**;

2.  Defendant's Motion for Summary Judgment, [Docket No. 20], is **DENIED**; and

3.  The above entitled matter is **REMANDED** to the Social Security Administration, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the Order.

Dated: July 1, 2020                    s/Leo I. Brisbois
                                       Hon. Leo I. Brisbois
                                       United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).